# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CORDERO ROBERT SEALS,

    Defendant.

No. 17-CR-28-LRR

**ORDER**

## I. INTRODUCTION

The matter before the court is Defendant Cordero Robert Seals's "Renewed Motion for Judgment of Acquittal" ("Motion") (docket no. 57).

## II. RELEVANT PROCEDURAL HISTORY

On June 21, 2017, a grand jury returned a Superseding Indictment (docket no. 26) against Defendant. Count 1 charged Defendant with distribution of a controlled substance resulting in serious bodily injury in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(C). *See* Superseding Indictment at 1. Count 2 charged Defendant with possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id*. at 2. On July 17, 2017, a jury trial commenced. *See* July 17, 2017 Minute Entry (docket no. 45). On July 18, 2017, Defendant moved for a judgment of acquittal. *See* July 18, 2017 Minute Entry (docket no. 47) at 3. The court reserved ruling on the motion as to the serious bodily injury enhancement on Count 1. *Id*.

On July 19, 2017, Defendant renewed his motion for judgment of acquittal at the close of Defendant's case. *See* July 19, 2017 Minute Entry (docket no. 49) at 2. The court again reserved ruling as to the enhancement. *Id*. On July 19, 2017, the jury returned a verdict finding Defendant guilty of both counts charged in the Superseding Indictment. *See* Jury Verdicts (docket no. 53). On July 28, 2017, Defendant filed the

Motion. On August 31, 2017, the government filed a Resistance (docket no. 62). On September 5, 2017, Defendant filed a Reply (docket no. 63). The matter is fully submitted and ready for decision.

### III. RELEVANT TRIAL EVIDENCE

Viewed in the light most favorable to the government, the relevant trial evidence is as follows.

On November 4, 2016, J.V. contacted Defendant to purchase heroin. J.V. picked up Defendant in a truck several blocks from a convenience store in Cedar Rapids, Iowa and purchased approximately $40 worth of heroin. Shortly thereafter, J.V. and Defendant drove to the convenience store. At approximately 3:52 p.m., J.V. entered the convenience store bathroom. *See* Government Exhibits 1A-K (docket no. 49-2). While inside the bathroom, J.V. utilized the bottom of a pop can as a spoon and injected the substance he had purchased from Defendant. Testing of the can revealed heroin and fentanyl residue. *See* Government Exhibit 4 (docket no. 49-4).

At approximately 3:56 p.m., J.V. returned to the truck and began to fill it with gas. *See* Government Exhibits 1A-K. At 3:57 p.m., J.V. collapsed. *Id*. J.V. became comatose, was breathing only four to six times a minute and was cyanotic. *See* Trial Transcript (docket no. 59) at 13. A convenience store employee called 911 and Emergency Medical Services ("EMS") subsequently arrived at the scene. EMS administered a substance called Naloxone to J.V. and he returned to a normal mental state within thirty to sixty seconds. *Id*. at 13-14.

Based on this response to Naloxone, emergency physician Dr. Joshua Pruitt testified that J.V. was unresponsive from an opiate overdose. *Id*. at 13. Dr. Pruitt further concluded that "[s]ave for the intervention of trained medical personnel, [J.V.] would have continued in th[e] decreased mental status with decreased respiratory effort" leaving "a significant risk for . . . anoxic brain injury and death." *Id*. at 14. Forensic Examiner

Roman Karas later performed testing of J.V.'s blood, which revealed unknown quantities of methamphetamine, morphine, codeine, fentanyl and acetylfentanyl. *Id*. at 5.

### IV. MOTION FOR JUDGMENT OF ACQUITTAL

#### A. Legal Standard

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. *See* Fed. R. Crim. P. 29(c). It is well settled that jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *See United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *Id*. Moreover, the court "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id*. (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to evaluate the credibility of witnesses—that task is for the jury. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

#### B. Analysis

In the Brief in Support of the Motion (docket no. 61), Defendant argues that he is entitled to a judgment of acquittal on the serious bodily injury enhancement on Count 1 because the government failed to prove that the heroin and fentanyl with which Defendant was charged were the but-for cause of J.V.'s serious bodily injury. *See* Brief in Support of Motion at 3-4.

To obtain a guilty verdict on Count 1, the government had to prove that Defendant: (1) knowingly or intentionally distributed heroin and/or fentanyl; and that (2) J.V. sustained a serious bodily injury caused by the use of those drugs. *See Burrage v. United States*, ___ U.S. ___, ___, 134 S. Ct. 881, 887 (2014) (enumerating the elements of the crime of distribution of heroin resulting in death as: "(i) knowing or intentional distribution of heroin, and (ii) death caused by ('resulting from') the use of that drug" (citations omitted)). "[W]here use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Id.* at 892. But-for causation "requires proof 'that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct.'" *Id.* at 887-88 (internal quotation marks omitted) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, ___, 133 S. Ct. 2517, 2525 (2013)). Defendant concedes that sufficient evidence supports his conviction for the underlying crime of distribution of a controlled substance including heroin and fentanyl. *See* Brief in Support of the Motion at 2 ("Defendant asserts that . . . [he] should only be convicted of the base crime of distributing a controlled substance including heroin and fentanyl."). Therefore, the court shall proceed to address the second element.

In the present case, testing revealed the presence of methamphetamine, morphine, codeine, fenantyl and acetylfentanyl in J.V.'s blood. *See* Trial Transcript at 5. Dr. Pruitt testified that, although other substances could have caused symptoms similar to those exhibited by J.V., it was his opinion that J.V. "was unresponsive from an opiate overdose." *Id.* at 13. He arrived at this conclusion because J.V. "responded within [thirty] to [sixty] seconds to th[e] Naloxone" administered by EMS. *Id.* at 13-14. Dr. Pruitt explained that there is "really no other explanation for [J.V.'s] . . . decreased mental status" because "Naloxone only works on opiates." *Id.* at 14. Thus, a reasonable-minded

jury could conclude from this evidence that J.V.'s injury was caused by opiates.

Therefore, the evidence at trial supports the conclusion that the methamphetamine found in J.V.'s blood was not the cause of J.V.'s injury, because it is not an opiate. *Id*. at 5-6. Dr. Pruitt further ruled out codeine as the cause of J.V.'s injury, because "[c]odeine tends to be a longer acting and less potent opiate" and explained that "it would be unusual for codeine to cause someone to lose consciousness like [J.V.] did." *Id*. at 17.

Dr. Pruitt testified that, "in regards to the morphine or the fentanyl or the acetylfentanyl, any one of those . . . in the right concentration could have caused [J.V.] to become unresponsive." *Id*. at 17. Based on his review of the laboratory reports, Dr. Pruitt explained that there was no way to determine the concentration of any one of these three substances in J.V.'s blood. *Id*.; *see also id*. at 21 (testimony of Karas explaining that, due to the limited blood sample provided, he "was unable to perform . . . additional quantitative testing on the opioids that were detected"). Dr. Pruitt explained that, because "it really depends on the concentration of each of th[e] drugs, . . . it would be hard to say one achieved the effect of . . . causing [J.V.] to become unconscious." *Id*. at 17. Therefore, Dr. Pruitt acknowledged that, "based on the laboratory reports," he could not make a determination as to which specific substance caused the injury with "any sort of degree of medical certainty." *Id*.

However, Dr. Pruitt explained that the primary issue in this case was timing. Dr. Pruitt testified that J.V.'s use of an opiate "some . . . date or sometime prior to" his use that immediately preceded his injury would not be the cause of the same. *Id*. at 15. Dr. Pruitt explained that, "[i]f there had been other opiates, [or] medications in the background that were . . . there previously, those would not have suddenly become so active that they would have caused that sort of a response. There had to be something that changed; some new drug introduced that caused . . . those symptoms to come on so rapidly." *Id*. at 15. In other words, it is Dr. Pruitt's opinion that any opiates in J.V.'s system, prior to the

5

injection of the drugs received from Defendant, were not the cause of his injury.

Defendant's argument hinges on the inability of the experts to render a definite conclusion as to which specific substance caused the injury. *See* Brief in Support of Motion at 4-9. However, Defendant's argument misses the mark. *Burrage* explicitly requires but-for causation for a defendant to be liable under the 21 U.S.C. § 841(b)(1)(C) penalty enhancement provision, "at least where use of the drugs distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury." 134 S. Ct. at 892; *see also United States v. Smith*, 656 Fed. Appx. 70, 74 (6th Cir. 2016) (noting that the defendant "suggests that because [the victim] had four depressants in her system and the coroner conducted no autopsy, no rational juror could conclude that [the defendant's] oxycodone caused her death. But the government need not prove that oxycodone was the sole cause of [the victim's] death; rather, it need only show that 'without the incremental effect' of the oxycodone, [the victim] would not have died."). Even assuming that the government was unable to establish that the concentration of fentanyl and/or morphine found in J.V.'s system was independently sufficient to cause his injury, this does not end the matter because the relevant test is but-for causation. *See Burrage*, 134 S. Ct. at 888 (explaining that but-for causation is established "so long as the other factors alone would not have" caused the harm).

Therefore, the present case is distinguishable from other cases applying "but-for causation" in the 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) context. In *Burrage*, the victim died "following an extended drug binge." *Id*. at 885. Two medical experts testified as to the cause of death. *Id*. at 885-86. The first expert, "determined that multiple drugs were present in [the victim's] system at the time of his death." *Id*. at 885. That expert "concluded that heroin," which had been distributed by the defendant, "'was a contributing factor' in [the victim's] death, since it interacted with other drugs to cause" the victim to stop breathing. *Id*. at 885–86. The second expert "described the cause of death as 'mixed

drug intoxication' with heroin, oxycodone, alprazolam, and clonazepam all playing a 'contributing' role." *Id*. at 886. The second expert "could not say whether [the victim] would have lived had he not taken the heroin." *Id*. Because the jury had been instructed that "the heroin distributed by the [d]efendant was a contributing cause of [the victim's] death," the United States Supreme Court remanded the case for application of the "but-for" causation standard. *Id*. at 886, 892.

Similarly, in *United States v. Ford*, the victim died with multiple drugs in his system. 750 F.3d 952, 955 (8th Cir. 2014). The medical examiner stated that the cause of death was "'polydrug toxicity,' with methamphetamine being the major contributing drug." *Id*. at 955. She testified that she was "confident that the cause of death was the combination of multiple drugs" and acknowledged on cross-examination that "she could not say whether [the victim] would have died without the morphine in his system." *Id*. A forensic toxicologist "concluded that heroin could have been the source of the morphine in [the victim's] blood and that a combination of the drugs found in [the victim's] system contributed to [his] death." *Id*. Because "the government proved only that the heroin was a contributing factor to [the victim's] death, [and] not that heroin was a but-for cause of [the victim's] death," the Eighth Circuit Court of Appeals reversed the defendant's conviction as to the resulting in death enhancement. *Id*. at 955-56; *see also Atkins v. O'Brien*, 148 F. Supp. 3d 547, 552 (N.D. W.Va. 2015) ("On the night that he died, [the victim] did not take a cocktail of drugs, akin to the addict in Burrage's case. Instead, the evidence indicates that he only injected heroin supplied by the [defendant]. Such a factual scenario clearly meets the 'but for' causation test set forth by the Court in *Burrage*, as [the victim] would not have died *but for* heroin supplied by [the defendant]." (citations omitted)); *United States v. Schneider*, 112 F. Supp. 3d 1197, 1215 (D. Kan. 2015) (concluding that evidence that individuals "died as a result of a mixed drug intoxication and had consumed drugs which were not prescribed by [the defendant]" was "not sufficient to support 'but for' causation").

7

The present case is distinguishable in several respects. First, although Dr. Pruitt was unable to state which particular substance caused J.V.'s injury, he concluded that, "but for the use of an opiate," J.V. would not have suffered the injury. Trial Transcript at 15. Second, Dr. Pruitt looked to the rapidity of the onset of J.V.'s symptoms. Dr. Pruitt explained that "the timing of onset from the time that . . . the substance was used to the onset of [J.V.'s] symptoms was very brief." *Id*. Dr. Pruitt also testified that intravenous use results in "the most rapid onset of symptoms with respect to using . . . heroin." *Id*. at 10. Further, Dr. Pruitt explained that other opiates in J.V.'s system "would not have suddenly become so active that they would have caused that sort of a response." *Id*. at 15; *see also United States v. Alvarado*, 816 F.3d 242, 244 (4th Cir. 2016) (concluding "that, because there was no evidence in the record that [the victim] could have died without the heroin, the jury's verdict was necessarily consistent with the Supreme Court's requirement of but-for causation"); *United States v. Volkman*, 797 F.3d 377, 393 (6th Cir. 2015) (concluding that "evidence of the increase in [the victim's] prescription for oxycodone just one day before her death—coupled with evidence that the prescriptions for the other drugs found in her system remained constant—was sufficient for a rational trier of fact to conclude that [the defendant's] unlawful prescription of oxycodone was a but-for cause of [the victim's] death").

J.V. testified that the heroin he injected on November 4, 2016, was purchased from Defendant. J.V. testified that, while in the convenience store bathroom, he utilized the bottom of a pop can to take the heroin he had purchased. Subsequent testing of the can, which J.V. identified as the one he had used, revealed heroin and fentanyl residue. *See* Government Exhibit 4. Thus, a reasonable jury could have concluded, based on this evidence and Dr. Pruitt's testimony, that the opiates that J.V. took immediately prior to his injury were the fentanyl and/or heroin purchased from Defendant. Critically, Dr. Pruitt testified that whatever opiate J.V. injected just prior to his injury was the cause of the same. Therefore, a reasonable jury could have concluded that the heroin and/or

8

fentanyl that J.V. obtained from Defendant, which J.V. injected just prior to his injury, were the but-for cause of J.V.'s serious bodily injury. Because a reasonable-minded jury could have found Defendant guilty beyond a reasonable doubt, Defendant's Motion must be denied.

## V. CONCLUSION

In light of the foregoing, Defendant Cordero Robert Seals's "Renewed Motion for Judgment of Acquittal" (docket no. 57) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 18th day of October, 2017.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA